# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| SARAH HRICZO, individually and on behalf of all similarly situated persons, | |
| Plaintiff, | Civil Action No. 2:23-cv-00142-SCJ |
| v. | |
| BRASELTON FINE FOODS, LLC d/b/a COTTON CALF KITCHEN, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR STIPULATED JUDGMENT AND ORDER APPROVING JOINT STIPULATION OF COLLECTIVE ACTION SETTLEMENT AND RELEASE AND <u>INCORPORATED MEMORANDUM IN SUPPORT</u>

Plaintiff Sarah Hriczo respectfully submits her Unopposed Motion for Stipulated Judgment and Order Approving Joint Stipulation of Collective Action Settlement and Release and Incorporated Memorandum in Support. Plaintiff respectfully requests that the Court approve her settlement of collective action allegations of unpaid minimum wages and withheld tips, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. (the "FLSA"). The Parties' Joint Stipulation of Collective Action Settlement and Release (the "Settlement

Agreement"),[1] attached hereto as Exhibit A, is submitted for the Court's approval. A Proposed Order and Stipulated Judgment is attached as Exhibit B.  In support, Plaintiff shows the Court as follows:

# I.    STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

## A.    PLEADINGS, INFORMAL DISCOVERY, AND SETTLEMENT

Plaintiff, a former employee of Defendant, filed her Collective Action Complaint and Consent to Join form on July 26, 2023.  [Doc. Nos. 1 and 1-1]. Plaintiff alleges, on behalf of herself and all others similarly situated, that Defendant willfully violated the FLSA by, as a regular routine and practice: (1) requiring Plaintiff and those similarly situated Servers and Bartenders to "tip out" and surrender 24.5% of the credit card tips they earned each shift, pursuant to which Defendant unlawfully withheld their tips, and as a result, violated the FLSA by taking a tip credit against their minimum wage obligations; (2) following the "tip out" process, and specifically with respect to Plaintiff and other Bartenders, requiring Plaintiff and other Bartenders to participate in an invalid tip pool, in which Defendant required them to split the remainder of their tips with a pool of employees that included management; (3) requiring Plaintiff and those similarly situated to spend time on work "directly supporting" tips for continuous periods of

---

[1] Capitalized terms in this motion have the same definition as set forth in the Settlement Agreement.

time exceeding thirty (30) minutes while taking a tip credit for that time, and as a result, violating the FLSA by taking a tip credit against their minimum wage obligations; and (4) requiring Plaintiff and those similarly situated to spend more than twenty (20) percent of their workweek performing work "directly supporting" tips and/or work that was not part of the tipped occupation while taking a tip credit for that time, and as a result, violating the FLSA by taking a tip credit against their minimum wage obligations.

On October 12, 2023, with Plaintiff's consent, Defendant filed a Consent Motion to Extend Defendant's Time to Answer or Otherwise Respond to Plaintiff's Collective Action Complaint.  [Doc. 9].  On October 13, 2023, the Court granted Defendant's Consent Motion, granting an extension of time, through and including November 13, 2023 for Defendant to respond to Plaintiff's Complaint.  [Doc. 10]. On November 8, 2023, in furtherance of the Parties' attempt to resolve the matter at an early stage, Defendant filed, with Plaintiff's consent, a Consent Motion for Temporary Stay of Litigation.  [Doc. 11].  On November 9, 2023, the Court granted the Consent Motion for Temporary Stay, staying all proceedings until December 12, 2023.  [Doc. 12].  On December 8, 2023, Defendant moved the Court, with Plaintiff's consent, for an order extending the stay of all proceedings for an additional thirty (30) days to allow the Parties additional time to continue their efforts to reach a resolution. [Doc. 13].  On December 11, 2023, the Court

granted the Consent Motion to Extend Temporary Stay of Litigation, staying all proceedings until January 11, 2024.  [Doc. 14].

On January 11, 2024, Defendant filed its Answer to Plaintiff's Complaint. [Doc. 15].  On February 6, 2024, the Parties jointly moved the Court to temporarily stay all proceedings until March 29, 2024 to permit the Parties to prepare for and conduct a scheduled mediation.  [Doc. 19].  On February 23, 2024, during a scheduling conference, the Court approved the Parties' Joint Motion and stayed discovery until ten (10) days after the mediation set for March 19, 2024.  [Doc. 25].  On March 19, 2024, the Parties attended mediation and both Parties and the Mediator determined during the mediation that an exchange of additional information would aid the Parties in the mediation process.  As a result, the Parties scheduled a second mediation date for April 10, 2024.

On March 26, 2024, the Parties filed a Joint Motion for Extension of Temporary Stay of Litigation to Attend Private Mediation seeking an Order from the Court to stay all proceedings until April 20, 2024 to permit the Parties to prepare for and conduct the second mediation session.  [Doc. 26].  On March 27, 2024, the Court granted the Parties' Joint Motion.  [Doc. 27].  On April 12, 2024, following the April 10, 2024 mediation, the Parties filed a Joint Status Report and Request to Extend Stay to provide the Parties sufficient time to work cooperatively in an attempt to reach agreement on a formal settlement agreement and for Plaintiff

to file an unopposed motion to approve settlement.  [Doc. 28].  On April 15, 2024, the Court denied the Parties' Joint Motion to Stay.  [Doc. 29].

The Parties began engaging in settlement negotiations in October 2023. Defendant provided Plaintiff with a substantial amount of data concerning Plaintiff's claims and alleged damages.  Declaration of Justin M. Scott ("Scott Decl.") at ¶ 15.  In total, and including Plaintiff, there are 36 members of the Settlement Collective and who are part of the Parties' settlement.  Following extensive arm's length negotiations, an offer, and several counteroffers, on April 10, 2024, the Parties reached an agreement in principle, which is now memorialized in the Settlement Agreement, attached hereto as Exhibit A.

Plaintiff's Counsel conducted a detailed analysis of the records it received and calculated, based on Plaintiff's damages model, that the 36 members of the Settlement Collective are owed, if all of Plaintiff's allegations are proven, a total of approximately $245,497.75 in unpaid minimum wages and approximately $564,787.54 in withheld tips for the time period beginning July 1, 2020 through August 19, 2023.  Scott Decl. at ¶ 17.  This number was vigorously contested by Defendant, as were, *inter alia*, all of Plaintiff's claims, including the claim regarding whether Defendant maintained an invalid tip pool pursuant to 29 U.S.C. § 203(m), and the alleged available damages.

In the settlement, Defendant has agreed to pay a Maximum Gross Settlement Amount of $287,500.00, of which, after attorneys' fees, costs, and expenses, a Revised Maximum Gross Settlement Amount of $215,625.00 will be made eligible for claiming by the members of the Settlement Collective.  As a result, after fees and costs, the members of the Settlement Collective are eligible to receive a gross amount that is approximately 27% of the alleged total unpaid wages and alleged withheld tips that Plaintiff calculates are owed based on Defendant's records for the three (3) year period (and a substantial percentage of the claimed unpaid wages), except that the settlement payments for each member of the Settlement Collective whose allocation is calculated to be less than $500.00 shall be revised upward to $500.00 and the remaining funds in the revised gross settlement amount then reallocated among other members of the Settlement Collective *pro-rata*. Scott Decl. at ¶¶ 18–20.  Twenty-five percent (25%) of the total settlement amount is allocated to attorneys' fees, costs, and expenses.  Scott Decl. at ¶ 21.  The amount allocated to each member of the Settlement Collective is a pro-rated amount based on the individual's: (a) employment dates, (b) number of total hours worked while employed with Defendant, (c) hourly rate, and (d) the estimated number of tips allegedly withheld, as estimated by Plaintiff based on Defendant's pay records.  Scott Decl. at ¶ 22.  Each individual's settlement allocation will accordingly be based on his or her individual potential damages based on

documents and information provided, with the $500.00 floor. Separately, and in addition to the $287,500.00 Maximum Gross Settlement Amount, Defendant will pay all employer-side payroll taxes and required withholdings on the wage payments made, and will pay directly all fees and costs of the mediator, as well as the costs associated with settlement administration. *(Id.)*

The Named Plaintiff Sarah Hriczo, opt-in Plaintiffs Salvador Penaloza Moctezuma and Julia Zambrano, and those members of the Settlement Collective who file a Claim Form and become Authorized Claimants will release their wage-and-hour claims, including minimum wage and withheld tip claims, for the period from July 26, 2020 through August 19, 2023.  Scott Decl. at ¶ 23; *see* Settlement Agreement.  This is a narrowly tailored release; there is no general release given by Settlement Collective members who become Authorized Claimants.[2]    (*Id.*) Additionally, there are no confidentiality, non-disparagement, or no re-hire provisions of the type courts have found objectionable in reviewing FLSA settlements for approval.  (*Id.*)

---

[2] As it relates only to Plaintiff individually, separately from the $287,500.00 common fund amount, Plaintiff is receiving an additional payment of $25,000.00 in consideration for the further mutual general release of claims by Plaintiff and Defendant, under which both parties release all waivable claims against one another.  (*Id.*) This payment for a separate general release of all claims by the named plaintiff is appropriate in FLSA collective action settlements. *See, e.g., Martinez v. Woodvalley Landscape*, No. 1:20-cv-04011-LMM, 2021 U.S. Dist. LEXIS 30908, at *5 n.1 (N.D. Ga. Feb. 17, 2021); *Evans v. Simply Storage Mgmt., LLC*, No. 1:19-cv-03355-CAP-LTW [Doc. 49] (N.D. Ga. Nov. 23, 2020).

The proposed Settlement Notice and Claim Form (Exhibits 1 and 2 to the Settlement Agreement), fully inform recipients regarding this case and their rights, including their right to participate in the settlement or decline to do so, the amount they will receive if they participate, and the claims they will release if they choose to participate.

## II.    ARGUMENT AND CITATION OF AUTHORITY

In order to have an enforceable release of FLSA claims in this Circuit, the Court must review and approve agreements settling alleged violations of the FLSA.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 702–14 (1945); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) (holding claims for back wages arising under the FLSA may be settled or compromised only with approval of the Secretary of Labor or the court).  "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."  *Lynn's Food Stores, Inc.*, 679 F.2d at 1353.  Accordingly, Plaintiff is submitting a copy of the Settlement Agreement for the Court's review and approval.

### A.    APPROVAL OF PAYMENTS TO PLAINTIFF AND PARTICIPATING MEMBERS OF THE FLSA COLLECTIVE

In order to approve a settlement of claims arising under the FLSA proposed by an employer and an employee, a court must determine that the settlement is a

8

"fair and reasonable [resolution] of a bona fide dispute" of the claims raised pursuant to the FLSA. *Id.* at 1355. There is a strong presumption in favor of finding a settlement fair. *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources."). The Eleventh Circuit has detailed the circumstances that justify court approval of an FLSA settlement in a litigation context as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores, Inc.*, 679 F.2d at 1354. In determining whether the settlement is fair, adequate, and reasonable, courts sometimes examine the factors used in approving the settlement of class actions under Federal Rule of Civil Procedure 23:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*See e.g.*, *Prieto v. Scheeler's Cafe De Marco, Inc.*, 2017 WL 359220, at *1 (M.D. Fla. Jan. 9, 2017) (citing *Dorismond v. Wyndham Vacation Ownership, Inc.*, 2014 WL 2861483, at *2 (M.D. Fla. June 24, 2014)); *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *Garcia v. Riccy's Landscaping Servs., Inc.*, 2009 WL 347418, at *2 (M.D. Fla. Feb. 11, 2009); *Hitchcock v. Orange Cty., Fla.*, 2006 WL 3614925, at *3 (M.D. Fla. Dec. 11, 2006).[3]  As set forth below, examination of each of these factors shows that the terms of the Agreement are fair, adequate, and reasonable, and should be approved by the Court.

### 1.    <u>The Agreement was not a Product of Collusion.</u>

In connection with mediation, counsel for Defendant produced to Plaintiff's counsel time and pay records for the Settlement Collective and all of its individual members, including time and pay records for the period of July 2020 through August 19, 2023 on a confidential basis.  Scott Decl. at ¶ 15.  This exchange allowed Plaintiff's counsel to make a thorough, and painstaking, assessment of the potential damages in this action based on those records.  *Id*. at ¶ 16.

---

[3] Plaintiff notes, however, that concern for absent class members, which underlies the approval factors in a Rule 23 settlement, is less present in an FLSA settlement such as this one, where each prospective opt-in plaintiff has the right to review and accept or reject the Agreement.  Each person can make their own decision about whether or not to participate, and each person releases no claims unless that person affirmatively opts in to accept the settlement.

As set forth above, the Parties engaged in lengthy and continued settlement negotiations before ultimately reaching an agreement to settle the case. Thus, the settlement in this case is the ultimate result of arm's-length negotiations by Parties who were well represented by experienced counsel[4] and made aware of all potential outcomes. That the case was settled with the assistance of experienced mediator Lee Parks after two mediation sessions further demonstrates the absence of collusion. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1369-70 (N.D. Ga. 2019) ("The parties settled this Action by mediation with an experienced mediator[], which further confirms that the process was procedurally sound and not collusive.").

Under the terms of settlement (if approved), the amount allocated to the 36 putative Settlement Collective members, after attorneys' fees, costs, and expenses,

---

[4] *See, e.g.*, *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103-CAP, 2014 U.S. Dist. LEXIS 200716, at *20 (N.D. Ga. May 19, 2014) ("In evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel. [Cit.] Throughout the litigation, [defendant] was represented by extremely capable counsel. They were worthy, highly competent and professional adversaries.") (*citing In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1348 (S.D. Fla. 2011) (finding "Class Counsel confronted [combined defendants], and with them a large contingent of some of the largest and most sophisticated law firms in the country") and *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results")) (internal quotation marks and citation omitted).

is a Revised Gross Settlement Amount of $215,625.00, and each Settlement Collective member who elects to participate in the Settlement and becomes an Authorized Claimant will receive a *pro-rata* amount of the entire settlement divided among the Settlement Collective members. *Id.* at ¶ 19. The applicable period is the three-year period from July 26, 2020 through August 19, 2023; if this litigation continued, Defendant would oppose the certification of an FLSA collective, would oppose a finding of willfulness, and would contend that the two-year period for non-willful violations should apply.

Defendant denies any liability under the FLSA and denies that Plaintiff is entitled to any recovery in this lawsuit; however, without admitting liability and solely for the purposes of avoiding ongoing costs of litigation, Defendant has agreed to make settlement payments to those Settlement Collective members who become Authorized Claimants as reflected in the Agreement.

In exchange for those settlement payments, Named Plaintiff Sarah Hriczo and the Settlement Collective members who become Authorized Claimants will provide Defendant with a narrowly-tailored release covering wage-and-hour claims only which arose during the time period from July 26, 2020 through August 19, 2023. *See* Exhibit A, Settlement Agreement, Section VIII(A). There is no general release in the Agreement as it relates to the members of the Settlement Collective. As it relates only to Plaintiff individually, Plaintiff is receiving a payment of

$25,000.00 in consideration for the further general mutual release of claims by Plaintiff and Defendant. This payment was negotiated separately from and subsequently to any potential settlement payments to members of the Settlement Collective. *Id*. at Section VIII(B)(2).

## 2. <u>The Complexity, Expense, and Likely Duration of the Litigation</u>.

The Settlement Agreement allows Plaintiff and any Authorized Claimant to take a substantial recovery now, without suffering the delay and risk of litigating the claims, damages, and defenses. In this case, further litigation would be time-consuming and expensive, including significant discovery of Defendant, Plaintiff, and putative members of the Settlement Collective, concerning willfulness and liquidated damages, and appeals. Material areas of dispute would include whether the certification of an FLSA collective is appropriate in this action, whether Plaintiff and the members of the Settlement Collective could make the showing of willfulness to achieve the three-year statute of limitations, and whether Defendant could demonstrate good faith to defeat claims for liquidated damages. Attorneys' fees, costs, and expenses in this case would only have continued to exponentially increase for both sides if the case had not settled.

3. **The Stage of the Proceedings and the Amount of Discovery Completed.**

This factor considers whether the parties have had the opportunity to fully evaluate the claims. *Carnegie v. Mut. Sav. Life Ins. Co.*, 2004 WL 3715446, *19 (N.D. Ala. Nov. 23, 2004); *see Meyer v. Citizens and Southern Nat. Bank*, 677 F. Supp. 1196, 1209–10 (M.D. Ga. Jan. 21, 1988). Plaintiff obtained ample data and documentation in advance of mediation which, coupled with counsel's experience litigating similar claims in other cases, allowed Plaintiff to make a reasoned analysis of the claims, damages, and likely litigation outcomes. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1370-72 (N.D. Ga. 2019) ("[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations…. Class Counsel are familiar with the legal issues and likely defenses of employers on these [FLSA wage] issues through litigating similar cases challenging the [same pay method].") (citations and quotations omitted).

In this case, the Parties exchanged material data and documents on an information and confidential basis to facilitate settlement discussions, including Defendant's production of the putative Settlement Collective members' time and pay records. Scott Decl. at ¶ 15. Given the nature of the claims in the case – that Plaintiff and members of the Settlement Collective were not paid all minimum wages and tips owed, due to Defendant's alleged FLSA violations – the necessary

information to evaluate damages and liability were: (a) employment dates, (b) number of total hours worked while employed with Defendant, (c) hourly rate, and (d) the estimated number of tips allegedly withheld while employed with Defendant, as estimated by Plaintiff based on Defendant's pay records. Defendant provided all of this information prior to Plaintiff making any settlement offer. Plaintiff's counsel analyzed the data in great detail and Defendant's time and pay records provided the basis for all subsequent negotiations. Consequently, the Parties have had sufficient information upon which to assess the potential merits of the case, liability and damages, and the risks attendant to continued litigation.

### 4.    The Probability of Plaintiff's Success on the Merits.

Plaintiff believes she would prevail on the merits if this case were to proceed. However, Defendant has denied that it engaged in any wrongdoing or violation of law and has asserted the "good faith" defense to liquidated damages under 29 U.S.C. § 260. In order to prove entitlement to liquidated damages, Plaintiff would have to defeat Defendant's showing of good faith. This settlement represents a compromise with respect to the issue of "good faith." Defendant would vigorously contest all of Plaintiff's allegations if this case was litigated further, including defending the validity of its tip pool and contesting the damages

alleged.[5]  Further, if the case were to proceed, Plaintiff and the members of the Settlement Collective would run the risk that any judgment won might not be collectible.

## 5.    The Range of Possible Recovery.

"[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As summarized above, Defendant disputes that Plaintiff and members of the Settlement Collective would be entitled to any damages in this action, and the Parties dispute the amount of damages to which Plaintiff and the members of the Settlement Collective might be entitled, which would be governed by the presence or absence of liquidated damages.  Based on Defendant's records, and Plaintiff's calculations derived therefrom, if Plaintiff prevailed on every claim at trial (likely

---

[5] Though Defendant would, in the course of litigation, vigorously oppose the merits of Plaintiff's claims and oppose the certification of any collective under Section 216(b) of the FLSA, it does not oppose the instant motion for approval of the proposed settlement or the certification of the proposed Settlement Collective for settlement purposes only. To the extent that the Court does not grant approval of the proposed settlement, Defendant reserves the right to raise any argument with respect to the merits of Plaintiff's claims or the appropriateness of the certification of any FLSA collective that it might have otherwise undertaken in litigation, or to make arguments that are contrary to the positions taken by Plaintiff in this memorandum.

more than a year from now), and defeated Defendant's good-faith defense, the maximum recovery to Plaintiff and the putative FLSA collective based on alleged unpaid minimum wages (without liquidated damages) would be approximately $245,497.75 and based on alleged withheld tips (without liquidated damages) would be approximately $564,787.54; Plaintiff could also seek attorneys' fees, costs, and expenses on top of this amount. The Maximum Gross Settlement Amount of $287,500.00 agreed to by the Parties and that would be made available to the Settlement Collective now without years of litigation, which, again, could pay approximately 27% of all alleged unpaid wages and alleged withheld tips to the members of Settlement Collective who become Authorized Claimants after attorneys' fees, costs, and expenses based on Defendant's records over the three-year period, is a good result for the Settlement Collective.

### 6.    Counsels' Opinions.

Based on what Plaintiff learned through informal discovery and from close analysis of Defendant's records, Plaintiff's counsel believes the Parties negotiated a fair settlement for Plaintiff and the Settlement Collective.  By settling, Plaintiff and the Settlement Collective avoid: challenges to the merits of Plaintiff's claims and to the certification of an FLSA collective; substantial and indefinite delay in any potential payment involved in having to wait for trial and any appeals; potential adverse determinations on the statute of limitations and liquidated

damages issues outlined above; and potential issues with judgment collection following years of expensive litigation. Plaintiff's counsel therefore recommends approval of this settlement and represents herein that the settlement is fair, beneficial, and equitably allocated among the Settlement Collective members.

## B.    CERTIFICATION OF A SETTLEMENT COLLECTIVE

Settlement of collective action claims by certification of a settlement purposes collective action and issuance of notice of rights to recover by opting in is a common method of settling FLSA collective actions, including within this district. *See, e.g., Martinez v. Woodvalley Landscape*, No. 1:20-cv-04011-LMM, 2021 U.S. Dist. LEXIS 30908 (N.D. Ga. Feb. 17, 2021) (approving one-step settlement process certifying settlement purposes collective and issuing notice of rights to recover by opting in); *accord Gaines v. Amazon.com LLC,* No. 1:19-cv-00528-WMR [Dkt. 72] (N.D. Ga. June 22, 2020); *Frazier v. American Health Imaging, Inc.*, No. 1:16-cv-02148-ELR [Dkt. 27] (N.D. Ga. Sep. 28, 2017).

Plaintiff contends that she has provided proof that the named Plaintiff, opt-in Plaintiffs, and members of the Settlement Collective members all worked the same positions (Servers and Bartenders), were paid the same way (subminimum "tip credit" wages) for working the same relevant duties (including "side work" non-tip-producing duties), and were subjected to the same alleged violations (payment of subminimum "tip credit" wages for non-tip-producing duties, deduction of

24.5% from credit card tips, invalid tip pooling, etc.) at one singular restaurant location.  Scott Decl. at ¶ 25. Plaintiff thus contends that she provides sufficient evidence to allow this settlement to proceed collectively. *Cf.*, *Lopez v. Hayes Robertson Grp., Inc.*, No. 13-10004-CIV, 2015 U.S. Dist. LEXIS 132673 (S.D. Fla. Sep. 29, 2015) (denying decertification of Rule 23 class action for minimum wage claims by tip credit-paid servers and bartenders for invalid tip pooling and deductions below minimum wage). Plaintiff further believes that the filing of two additional opt-in consents joining Plaintiff in this litigation, which constitutes participation by nearly 10% of the total potential collective prior to issuance of notice, satisfies the Eleventh Circuit's "showing of interest" requirement. *See, e.g., Reece v. United Home Care of N. Atlanta, Inc.*, No. 1:12-CV-2070-RWS, 2013 U.S. Dist. LEXIS 31995, at *11 (N.D. Ga. Mar. 7, 2013) ("showing of interest" requirement satisfied by two consents joining named plaintiff in the litigation).[6]

### C.   APPROVAL OF PAYMENT OF ATTORNEYS' FEES, COSTS, AND EXPENSES

The Settlement Agreement provides that Plaintiff's attorneys' fees, costs, and expenses shall be paid from the Maximum Gross Settlement Amount in the

---

[6] As noted above, Defendant would oppose the certification of any collective under Section 216(b) of the FLSA in litigation, but does not oppose the instant request for certification of the proposed Settlement Collective for settlement purposes only. Defendant does, however, reserves its rights to oppose the certification of any FLSA collective that it might have otherwise undertaken in litigation in the event the proposed Settlement is not approved or is otherwise terminated.

total amount of $71,875.00.  *See* Exh. A.  Plaintiff requests that the Court approve this payment of attorneys' fees, costs, and expenses. Defendant does not oppose this request for settlement purposes only.

The FLSA requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Fee awards are mandatory for prevailing plaintiffs in FLSA cases.  *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).  A party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought."  *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).  In the instant action, Plaintiff and the Settlement Collective stand to recover a favorable settlement payment and net, after attorneys' fees, costs, and expenses, approximately 27% of the minimum wages and tips allegedly owed in the three-year period based on Plaintiff's analysis of Defendant's records.  Thus, Plaintiff is entitled to payment of attorneys' fees, costs, and expenses in this action by Defendant in the amount stated in the Settlement Agreement.

Plaintiff's Counsel took this case on a contingency basis, which provides for the payment of attorneys' fees in the amount of 40% of any settlement, but Plaintiff's Counsel has agreed to the substantially lower percentage of 25% and

waiver of additional reimbursement for costs and expenses to increase the recovery to the Named Plaintiff and the Settlement Collective. Scott Decl. at ¶ 32. Because of this contingency fee arrangement, Plaintiff's Counsel has not received payment for any of the attorney time litigating the case, nor have they received reimbursement for their out-of-pocket costs expended (currently $599.80). Scott Decl. at ¶ 29. Plaintiff's Counsel undertook the financial risk of potentially unsuccessful litigation, and potentially no payment of attorneys' fees and costs, in an effort to recover unpaid wages for workers they believe were not paid correctly for all hours worked. (*Id.*)

Courts routinely approve contingency fee awards in the amount of 33% or more, and it would be fair and reasonable to approve a 25% percentage here. *See e.g.*, *Wreyford v. Citizens for Transp. Mobility, Inc.*, 2014 WL 11860700, at *1–2 (N.D. Ga. Oct. 16, 2014) (approving a one-third fee); *George v. Academy Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1382–83 (N.D. Ga. 2019) (awarding attorneys' fees totaling 33% of the common fund in a hybrid Rule 23 class action/FLSA collective action and collecting wage-and-hour cases in which other Eleventh Circuit district courts approved similar contingency fees); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement.").

The reasonableness of attorney's fees from settlement of FLSA collective actions by creation of a common fund for payment of all claims, fees, and costs, is determined under the common fund analysis. *Martinez v. Woodvalley Landscape*, No. 1:20-cv-04011-LMM, 2021 U.S. Dist. LEXIS 30908, at *4 (N.D. Ga. Feb. 17, 2021) (holding, in approving claims-made FLSA collective action settlement requiring participants to opt-in to claim from the fund, "[a]n award of attorneys' fees and costs as a percentage of the common fund is acceptable in these circumstances and is justified here."); *Kreher v. City of Atlanta*, No. 1:04-cv-2651-WSD, 2008 U.S. Dist. LEXIS 138404, at *15 n.11 (N.D. Ga. Sep. 30, 2008) (holding, in approving settlement covering FLSA collective, that "the common fund analysis [not lodestar] is the appropriate application."). Under Eleventh Circuit precedent, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297-98 (11th Cir. 1999) (affirming attorney fee award based on the total value of a reversionary common fund).  Plaintiff's Counsel's fee request is reasonable.[7]

---

[7] Plaintiff is aware of the recent Eleventh Circuit decision in *Drazen v. Pinto*, No. 21-10199, 2024 WL 2122466 (11th Cir. May 13, 2024), holding *in part* that, in the Rule 23 class action context where the Rule 23 class settlement released claims by all absent class members but only those members who opt-in (by submitting a

Lead counsel for Plaintiff has more than a decade of wage-and-hour experience, has litigated class and collective wage-and-hour actions in numerous courts across the country, and regularly acts as lead counsel on FLSA collective actions in the Northern District of Georgia.  Scott Decl. at ¶ 7. Co-counsel has similarly been recognized by courts, including within this district, as having extensive FLSA collective action litigation experience. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1378 (N.D. Ga. 2019) (approving settlement of FLSA collective and Rule 23 class claims, holding as to lead counsel C. Andrew Head "Plaintiffs were represented in this action by competent, experienced counsel with extensive experience in wage and hour class and collective action litigation.").

Typical opt-in participation rates in claims-made FLSA collective settlements are often high, and therefore under any likely scenario, this is not the

---

claim) receive payment, a percentage fee was not appropriate.  Plaintiff submits that *Drazen* does not prohibit a percentage of common fund fee in the context of an opt-in settlement due to the number of critical differences between a Rule 23 "claims made" class settlement binding all class members to releases compared to this collective settlement, including the material difference that members of a putative settlement collective who elect not to join the final settlement collective release no claims. "A critical feature of a claims-made settlement is that although it only pays the claims of class members who file them, it releases the claims of the entire class." 4 Newberg and Rubenstein on Class Actions § 13:7 (6th ed.) "It is not, therefore, the functional equivalent of an 'opt-in' settlement." *Id.* "By releasing the claims of nonclaiming class members, a claims-made settlement, like most class action settlements, requires a class member to opt out to escape its binding effect." *Id.*

type of settlement where the attorney's fee amount would dwarf the total anticipated claimed amounts. Opt-in participation rates in response to a settlement notice are often much higher than typical opt-in participation rates in response to mere notice of conditional certification of a collective action. *Castillo v. Morales, Inc.*, No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936, at *19 (S.D. Ohio Dec. 22, 2015) (collecting cases demonstrating opt-in claim filing rates of 46% and 92% in response to FLSA collective settlement notices: "It stands to reason that th[e] rate [typical for responding to conditional certification notice] could be considerably lower than an opt-in rate after putative class members have received a notice of settlement explaining the monetary award they would receive upon opting in, because class members would likely see the latter as more of a guarantee.").

Lastly, Plaintiff notes that the Settlement Agreement imposes substantial post-approval work on Plaintiff's Counsel, and the attorneys' fees, costs, and expenses to be awarded pursuant to the settlement do not far exceed even the current lodestar. Specifically, Plaintiff's Counsel is responsible for explaining the settlement to members of the Settlement Collective who might contact them, counseling them regarding their rights in the settlement if contacted, and handling issues related to Claim Forms, and potentially late-submitted Claim Forms. *See* Exh. A; Scott Decl. at ¶ 30. Accordingly, if the Court is inclined to scrutinize Plaintiff's attorneys' fees, Plaintiff respectfully requests that the Court reserve such

analysis for after settlement administration, at which point Plaintiff's Counsel could, if the Court wishes, submit contemporaneous time entries with additional briefing. As of the date of this filing, Plaintiff's counsel's fees, costs, and expenses at their regular rates, which have consistently been approved in the Northern District of Georgia, exceed $68,354.30. Scott Decl. at ¶ 29.

## III.  APPOINTMENT OF THE CLAIMS ADMINISTRATOR

The qualified settlement fund to be established under the terms of the Agreement will be administered by an independent and experienced third-party settlement administrator, and it is requested that Rust Consulting, be appointed as the settlement Claims Administrator ("Claims Administrator") in the Court's Approval Order. As Claims Administrator, Rust Consulting has agreed to subject itself to the jurisdiction of the Court and waive any jurisdictional objections.

## IV.  CONCLUSION

For the reasons set forth above and for good cause shown, Plaintiff respectfully requests that this Court grant this unopposed motion and enter the Stipulated Judgment and Order attached hereto as Exhibit B approving the Settlement Agreement (Exhibit A hereto) and proposed Notice and Claim Form (Exhibits 1 and 2 to the Settlement Agreement) by stipulated judgment.

Respectfully submitted this 12th day of June 2024.

 */s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Tierra M. Monteiro
Georgia Bar No. 743224
RADFORD SCOTT LLP
160 Clairemont Avenue, Suite 610
Decatur, GA 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@radfordscott.com
tmonteiro@radfordscott.com

C. Andrew Head
Georgia Bar No. 341472
HEAD LAW FIRM, LLC
730 Peachtree St. NE, Suite 600
Atlanta, Georgia 30308 (virtual); and
4422 N. Ravenswood Avenue
Chicago, Illinois 60640 (resident office)
Telephone: (404) 924-4151
Facsimile: (404) 796-7338
ahead@headlawfirm.com

Counsel for Plaintiff

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this document was prepared in

Times New Roman (14-point) font, in accordance with Local Rule 5.1(C).

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SARAH HRICZO, individually and
on behalf of all similarly situated
persons,

    Plaintiff,

v.

BRASELTON FINE FOODS, LLC
d/b/a COTTON CALF KITCHEN,

    Defendant.

Civil Action No. 2:23-cv-00142- SCJ

**JURY TRIAL DEMANDED**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification to all attorneys of record.

Respectfully submitted this 12th day of June 2024.

        */s/ Justin M. Scott*
        Justin M. Scott
        Georgia Bar No. 557463
        Tierra M. Monteiro
        Georgia Bar No. 743224
        RADFORD SCOTT LLP
        160 Clairemont Avenue, Suite 610
        Decatur, Georgia 30030
        Telephone: 678.780.4880
        Facsimile: 478.575.2590
        jscott@radfordscott.com
        tmonteiro@radfordscott.com

C. Andrew Head
Georgia Bar No. 341472
HEAD LAW FIRM, LLC
730 Peachtree St. NE, Suite 600
Atlanta, Georgia 30308 (virtual); and
4422 N. Ravenswood Avenue
Chicago, Illinois 60640 (resident office)
Telephone: (404) 924-4151
Facsimile: (404) 796-7338
ahead@headlawfirm.com

Counsel for Plaintiff